NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

LOCAL 863, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSERS,
AND HELPERS OF AMERICA

        Plaintiffs,    Civ. No. 06-3827

v.

SUPERMARKET DISTRIBUTION    **O P I N I O N**
SERVICES, INC. and THE GREAT
ATLANTIC & PACIFIC TEA COMPANY

        Defendants.

---

Appearances:

ZAZZALI, PAGELLA, NOWAK,
KLEINBAUM & FRIEDMAN
By: Kenneth I. Nowak, Esq.
One Riverfront Plaza
Newark, New Jersey 07102-5410

*Attorneys for Plaintiffs*

REED SMITH LLP
By: Don A. Innamorato, Esq.
    Peter D. Post, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540

*Attorneys for Defendants.*

Plaintiff Local 863, International Brotherhood of Teamsters, Chauffeurs, Warehousers, and Helpers of America ("Local 863"), commenced this action (the "Action") on August 14, 2006 by filing a verified complaint seeking an order, pursuant to the Labor Management Relations (Taft-Hartley) Act, Pub. L. No. 80-101, 61 Stat. 136 (1947) ("LMRA"), enforcing a labor arbitration award, as clarified (the "Award"), made by Arbitrator Michael A. Berzansky (the "Arbitrator") to resolve a dispute between Local 863 and Defendants Supermarket Distribution Services, Inc. ("SDS") and the Great Atlantic & Pacific Tea Company ("Great Atlantic," collectively, the "Defendants").

## I.  BACKGROUND

Great Atlantic is a large retail grocery store operator, and SDS, a wholly owned subsidiary of Great Atlantic, is a wholesale food distributer.  SDS and Local 863--a labor union representing certain employees of SDS--entered into a collective bargaining agreement (the "CBA"), effective from October 11, 1998 through January 31, 2004, governing the rates of pay, rules and working conditions for employees of SDS's grocery, meat and produce departments. Along with many other provisions, the CBA set forth the rules for vacation time allocation.  A dispute over the interpretation of those rules provided the impetus for the arbitration underlying this Action.

In August, 2003, SDS closed its meat and produce departments and offered grocery department positions to the employees affected by the restructuring.  On September 12, 2003, SDS and Local 863 entered into a Department Closing and Severance Agreement (the "Closing Agreeement") which set forth, among other things, the terms and conditions by which individual

2

employees could choose either severance or transfer to the grocery department.

The Closing Agreement provided that each of these employees would "be paid his earned by [sic] untaken personal holidays, vacation and sick days for 2003 to the extent required by the CBA if they elect severance pay but not if they transfer to the Grocery Department." Several employees opted for severance, but they received less than they expected to receive in severance pay, and a dispute arose between Local 863 and SDS.

In short, SDS refused to pay for any vacation time earned in 2003, arguing that company policies provided that an employee did not become eligible for vacation pay for any given year unless that employee remained on the payroll through the first day of the following year. Since all of the affected employees were laid-off prior to the start of 2004, the company reasoned that none of them was entitled to vacation pay for 2003. Local 863 argued that SDS had misinterpreted the CBA and that SDS owed the vacation time disbursements.

On January 30, 2004, Local 863 commenced arbitration proceedings by advising "the State Board of Mediation [the "Board"] of the dispute and demand[ing] arbitration as set forth in the agreement." (Nowak Cert., ¶ 6). On August 16, 2004, this Court denied a request made by Defendants, as a part of a separate proceeding, for emergent declaratory relief that Defendants had no legal obligation to proceed with arbitration.

On November 29, 2004, the Arbitrator issued his decision and award, which included, among other things, a statement directing SDS to "pay the severed employees the vacation time earned in calender year 2003." In January, 2005, SDS sent to Local 863 a calculation worksheet

3

providing a total amount which SDS believed the employees had "earned in 2003." Local 863 disagreed with the computation and argued that SDS had misconstrued the Arbitrator's decision. On February 1, 2005, Local 863 requested clarification from the arbitrator.

In this action for confirmation of the Arbitrator's clarified Award, Defendants raise various defenses which Local 863 contends are untimely. Defendants argue that since the court must adopt New Jersey time limitations in labor arbitration disputes, by extension, New Jersey law also applies in determining whether defenses may be raised in a confirmation proceeding, even when a motion to vacate would be untimely. Thus, Defendants contend that the defenses raised should be considered. Defendants also contend that, after issuing his initial award, the Arbitrator was <u>functus officio</u>, and had no authority to issue the clarified Award, and that Defendants did not forgo any rights or remedies by failing to pursue judicial review of what Defendants argue was an invalid clarification.

## II. **DISCUSSION**

"In a proceeding to confirm or vacate an arbitration award, a court's review is exceedingly narrow." <u>Eichleay Corp. v. International Ass'n of Bridge, etc.</u>, 944 F.2d 1047, 1055-56 (3d Cir.1991). "An arbitration award can be vacated only if it does not draw its essence from the collective bargaining agreement." <u>Id.</u> at 1056 (citing Roberts & Schaefer Co. v. Local 1846, <u>United Mine Workers</u>, 812 F.2d 883, 885 (3d Cir.1987)). "The district court may not vacate an arbitration award merely because it would decide the merits differently." <u>Eichleay</u>, 944 F.2d at 1056 (citing <u>Tanoma Mining Co. v. Local Union No.</u> 1269, <u>United Mine Workers</u>, 896 F.2d 745, 747 (3d Cir.1990)). "So long as the arbitration award has some support in the record, and the

arbitrator has not manifestly disregarded the law," the district court must affirm the award. Eicheleay, 944 F.2d at 1056 (citing Tanoma, 896 F.2d at 748-49).

Before reaching the merits of the underlying arbitration dispute, the court will determine whether the issues raised constitute untimely defenses to an arbitration award. Defendants argue that the court must apply the doctrine of functus officio and reject the clarified Award of the Arbitrator. Local 863 argues that the doctrine of functus officio has no bearing because the defendants are time-barred from raising any defenses.

Functus officio, Latin for "a task performed," refers to "a common-law doctrine barring an arbitrator from revisiting the merits of an award once it has issued." Office & Professional Employees Intern. Union, Local No. 471 v. Brownsville General Hosp., 186 F.3d 326, 331 (3d Cir.1999); see also Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985, 991 (3d Cir.1997); Bayne v. Morris, 68 U.S. (1 Wall) 97, 99 (1863) ("arbitrators exhaust their power when they make a final determination on the matters submitted to them. They have no power after having made an award to alter it; the authority conferred on them is then at an end"). Functus officio has two separate applications in this case–one which must be examined in order to resolve the timing issue, and one which will be examined only if the timing issue is resolved in favor of the Defendants. The first question is whether, in view of the applicable law, the Arbitrator's clarified Award was a legally significant event which started the clock running on the applicable limitations period. The second question related to functus officio, which the court will reach only if the court finds that the defenses were timely raised, concerns the merits of the Arbitrator's clarified Award.

5

A. **Applicable Law**

Defendants contend, unconvincingly, that the New Jersey Administrative Code, 12:105-5 (which the parties cite as the "rules of the New Jersey State Board of Mediation"; hereinafter, referenced as the "Code") governs the functus officio analysis here because, according to the Defendants, the CBA included a choice of law provision adopting the Code.

In support of the proposition that the CBA overrides federal law in this case, the Defendants cite the unpublished opinion of this court in Elizabethtown Gas Co. v. Utility Workers Union, Local 424, Civil Action No. 09-898, 1990 LEXIS 14562 (Nov. 1, 1990), in which the court applied the parties' choice of New Jersey the law vis-a-vis the Code. Although the court is presently without a copy of the collective bargaining agreement examined in Elizabethtown, it appears from the language of that opinion that the parties in Elizabethtown--unlike the parties in the case at bar--specifically adopted "the rules of the New Jersey State Board of Mediation." Id., at *9. While the CBA provided that the Board would serve as the Parties' appointing authority for arbitration, it does not specifically provide any choice of law. It is true that the Code contains a self-designating clause, § 12:105-1.1(a)–that whenever parties "in their collective bargaining agreements . . . have provided for arbitration through" the Board, the related Code provisions shall be deemed a part of that collective bargaining agreement–but there is no evidence the parties agreed to any provision of the Code, including the self-executing provision. Here, the CBA does not provide a choice of law, and, without any specific language adopting the Code, the court defers to federal law.

Section 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.

§ 185(a), provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877 (1988), the Supreme Court held that "§ 301 not only provides federal-court jurisdiction over controversies involving collective-bargaining agreements, but also 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'" Id., at 403, 108 S.Ct., at 1880, (citing Textile Workers v. Lincoln Mills, 353 U.S. 448, 451, 77 S.Ct. 912, 915 [1957]). The Court held specifically that "§ 301 mandated resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." Lingle, at 404. The source of substantive law for disputes arising under § 301 is federal law, and any state law applied in order to find the rule that will best effectuate the federal policy, will be absorbed as federal law and will not be an independent source of private rights. Id., at 457-58.

Under federal law, the doctrine of functus officio "is motivated by a perception that arbitrators, lacking the institutional protection of judges, may be more susceptible to outside influences pressuring for a different outcome and also by the practical concern that the ad hoc nature of arbitral tribunals makes them less amenable to re-convening than a court." Brownsville, 186 F.3d at 331. "The doctrine of functus officio ... was applied strictly at common law to prevent an arbitrator from in any way revising, re-examining, or supplementing his

7

award." Matlack, 118 F.3d at 991.  It is still applied strictly in New Jersey, and, under the Code, § 12:105-5, "[a]n arbitrator becomes functus officio upon signing his or her award and he may not add to, subtract from or in any way explain, correct or modify his or her award unless all parties, in writing, agree to reinstate his or her authority."

Following the Supreme Court's decision in Textile Workers Union v. Lincoln Mills, 353 U.S. 448 (1957), which held that § 301 directs the federal courts to create a "common law of labor arbitration," however, "the federal courts have been less strict in applying the [doctrine] in reviewing labor disputes." Brownsville, 186 F.3d, at 331 (quoting Matlack, 118 F.3d, at 991).

The Third Circuit Court of Appeals has recognized the following three exceptions to the functus officio rule: (1) an arbitrator "can correct a mistake which is apparent on the face of the award;" (2) "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination;" and (3) "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 332 (3d Cir.1991) (citations omitted; brackets in original) (quoting La Vale Plaza, Inc. v. R.S. Noonan, Inc., 378 F.2d 569, 573 [3d Cir.1967]).

Given the apparent conflict between state and federal law on the issue of functus officio, the court must apply the federal law interpretation to the facts of the case.

8

B. **Time to Object; Generally**

The Court of Appeals set forth the general rule regarding the timing of objections to labor arbitration awards in Service Employees Intern. Union Local 36, AFL-CIO v. City Cleaning Co., Inc. 982 F.2d 89, 93 (3d Cir.1992), holding that:

> . . . in a Section 301 proceeding to confirm a labor arbitration award, the relevant state statute of limitations is applied . . . [and] the failure to raise [timely] objections . . . which could have been raised in a motion to vacate, modify, or correct the awards bars raising them in confirmation proceedings held thereafter.

Id. (citing Service Employees International Union v. Office Center Services Inc., 670 F.2d 404, 412 [3d Cir.1982]["if a defendant has important defenses to an arbitration award, he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding."])  Here, the Parties submit that New Jersey's 90-day limitation period should be adopted.

Defendants argue that, in adopting New Jersey's 90-day limitation period, the court should also adopt New Jersey case law concerning the application of the time limitation.  The Defendants contend that in New Jersey, defenses may be raised in a confirmation proceeding even after the expiration of the applicable limitations period for an action to vacate.  Policeman's Benevolent Ass'n, Local 292 v. Borough of North Haledon, 158 N.J. 392, 403 (1999) ("Although the losing party may not institute an action to vacate an award after the expiration of three months, it may file an answer asserting affirmative defenses" [in a confirmation action]).  Defendants argue, incorrectly, that their defenses must be entertained by the court despite the expiration of limitations period for an action to vacate.

9

"When a federal court borrows a state statute of limitations ... the court is not applying state law; it is applying federal law." Hemmings v. Barian, 822 F.2d 688, 689 (7th Cir.1987). Thus, "it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447 (1977). Further, because state law is utilized only to "close interstices in federal law[,] ... when it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than necessary." West v. Conrail, 481 U.S. 35, 39-40, 107 S.Ct. 1538 (1987).

In Service Employees, 670 F.2d 404, the Court of Appeals affirmed the District Court's adoption of the Pennsylvania time limitation, and approved of Pennsylvania's court-made rule, which is consistent with federal law (which the court would have applied regardless of the Pennsylvania rule), barring defenses in a confirmation action after the time limit has expired for bringing an action to vacate. This application of "borrow no more than necessary," for purposes of arbitration confirmations, is consistent with the positions of other circuits. See, i.e., Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85 (2d Cir. 1998) (New York rule allowing defenses in a confirmation proceeding, after the expiration of the applicable time limitation for an action to vacate, did not apply to § 301 claim).

### C. Time to Object; Clarifications

Defendants argue emphatically that the clarification is invalid, that the arbitrator had no authority to issue it, and that the Defendants were not under the usual obligation to pursue legal remedies within the time to vacate. Had this Award been the original decision of the Arbitrator,

10

the time limitation clearly would apply. However, the law is less clear as to whether the time limitation applies to this clarified Award.

The Third Circuit Court of Appeals has not specifically addressed whether a party to an arbitration, adversely affected by a post-award action by the arbitrator–such as this clarified Award--must object to such an action within the time limitation for a motion to vacate. The only circuit, thus far, to consider this point is the First Circuit Court of Appeals in <u>Local 2322, Intern. Broth. of Elec. Workers v. Verizon New England, Inc.</u>, 464 F.3d 93, 98-99 (1st Cir. 2006). In <u>Local 2322</u>, the court held that an adversely-affected party, if it fails to object within the time limitation for an action to vacate, is precluded from raising legal objections to the arbitrator's post-award action. <u>Id.</u>, at 98-99. While the Third Circuit Court of Appeals has not addressed precisely this question, the First Circuit's holding in <u>Local 2322</u> accords with policy goals elucidated by the Third Circuit Court of Appeals in <u>Service Emp. Intern. Union</u>, 670 f.2d 404. The court explained:

> . . . there are sound reasons for distinguishing between the period in which a motion to vacate can be brought and the period for bringing an action to confirm. An action to vacate an award challenges the underlying validity of the arbitration proceeding and award. The policy of quickly resolving disputes subject to arbitration, especially labor disputes, favors a short limitations period for such challenges. Occasionally, in the implementation process, however, parties to an arbitration may be willing or find it necessary to readjust the terms of the arbitration award before seeking its confirmation. Recognizing the realities of the marketplace, the Pennsylvania legislature may with good reason have allowed a longer period of time for the confirmation of a concededly valid award without forcing the parties to resort to judicial involvement.

<u>Id.</u>, at 412.

Under federal law, there are many circumstances in which further action by an arbitrator, after issuance of an award, may be binding on a party. See Colonial Penn, 943 F.2d, at 332. Thus, any action taken by an arbitrator after issuance of an Award but before judicial enforcement, is a legally significant event which starts the clock on the applicable limitations period. See Local 2322, Intern. Broth. of Elec. Workers v. Verizon New England, Inc., 464 F.3d 93, 98-99 (1st Cir. 2006).

Several other circuits generally agree with this approach, although they have addressed a variety of different kinds of objections. See, e.g., Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85, 88-89 (2d Cir.1998) (objection to arbitrator's jurisdiction); Teamsters Local No. 579 v. B & M Transit, Inc., 882 F.2d 274, 276-77 (7th Cir.1989) (same); Prof'l Adm'rs Ltd. v. Kopper-Glo Fuel, Inc., 819 F.2d 639, 642 (6th Cir.1987) (claims should not have been submitted to arbitration); Int'l Bhd. of Elec. Workers, Local Union No. 969 v. Babcock & Wilcox, 826 F.2d 962, 965-66 (10th Cir.1987) (grievance committee lacked jurisdiction to decide dispute).

Of course, an adversely-affected party should not always be required to acknowledge an action taken by an arbitrator. In Local 2322, the court acknowledged that "[t]here may be exceptions-for example, if [an adversely affected party] showed that court review was no longer available or perhaps if it had never been a party to the arbitration." 464 f.3d, at 98. Neither of these exceptions applies here, and Defendants objections were subject to the applicable time limitation.

Defendants contend that a "party does not waive its right to object to a violation of the

12

NJSBM's Rules and Regulations <u>by not proceeding</u> in an arbitration . . . " (Def.'s Br. at 20-21.) However, under federal law, a party waives its rights if it fails to act within the limitations period for a motion to vacate.  Additionally, Defendants' continued references to the Code are inapposite because, as discussed at length in part A, <u>supra</u>, the Code does not govern the court's review of this case since the Code is preempted by federal law.

Here, after the Arbitrator issued the clarified Award which was adverse to the Defendants, it was incumbent upon Defendants to raise any legal challenge to the clarified Award within the applicable time period.  <u>Id.</u>

Since the Arbitrator's clarified Award was issued on March 3, 2005, nearly two years before the Defendants filed an answer and affirmative defenses (on January 5, 2007) in the case at bar, Defendants' objections to the arbitration Award are untimely.

### III.  <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's motion for an order enforcing the Award will be granted.  The court will enter an order implementing this opinion.

/s/    Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 14, 2008

13